## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

PAUL J. McNALLY, as he is TRUSTEE,
MASSACHUSETTS LABORERS' HEALTH AND
WELFARE FUND and NEW ENGLAND LABORERS'
TRAINING TRUST FUND; JAMES MERLONI, JR.,
as he is TRUSTEE, MASSACHUSETTS LABORERS'
PENSION FUND and MASSACHUSETTS LEGAL
SERVICES FUND; MARTIN F. WALSH, as he is
TRUSTEE, MASSACHUSETTS LABORERS'
ANNUITY FUND,

        Plaintiffs

        vs.

SPENCER WHITE & PRENTIS FOUNDATION CORP.
and BRIAN LARUE,

        Defendants

        and

J. DERENZO CONSTRUCTION COMPANY, INC.,
HORTON CONSTRUCTION, INC.,
MANSOUR CONSTRUCTION, INC.,
O'CONNOR CONSTRUCTORS, INC.,
M. DEMATTEO CONSTRUCTION CO. and
BLAKESLEE ARAPAIA CHAPMAN, INC.,

        Reach-and-Apply Defendants

        and

BANK OF AMERICA and CITIZENS BANK,

        Trustees

05 10332 NMG

MAGISTRATE JUDGE New Mag

C.A. No.

RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED yes
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE 2/18/05

## COMPLAINT FOR DELINQUENT CONTRIBUTIONS
## AND TO OBTAIN AN AUDIT

### NATURE OF ACTION

1.    This is an action brought pursuant to §§502 and 515 of the Employee Retirement

Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132(a)(3) and (d)(1) and

1145, by employee benefit plans to obtain a payroll audit and to enforce the obligations to make contributions to such plans due under the terms of a collective bargaining agreement and the plans.

## JURISDICTION

2.     The Court has exclusive jurisdiction of this action pursuant to §502(a), (e) and (f) of ERISA, 29 U.S.C. §§1132(a), (e) and (f), without respect to the amount in controversy or the citizenship of the parties.

## PARTIES

3.     Plaintiff Paul J. McNally is a Trustee of the Massachusetts Laborers' Health and Welfare Fund. The Massachusetts Laborers' Health and Welfare Fund is an "employee welfare benefit plan" within the meaning of §3(3) of ERISA, 29 U.S.C. §1002(3). The Fund is administered at 14 New England Executive Park, Burlington, Massachusetts, within this judicial district.

4.     Plaintiff James Merloni, Jr. is a Trustee of the Massachusetts Laborers' Pension Fund. The Massachusetts Laborers' Pension Fund is an "employee pension benefit plan" within the meaning of §3(2) of ERISA, 29 U.S.C. §1002(2)(A). The Fund is administered at 14 New England Executive Park, Burlington, Massachusetts, within this judicial district.

5.     Plaintiff Martin F. Walsh is a Trustee of the Massachusetts Laborers' Annuity Fund. The Massachusetts Laborers' Annuity Fund is an "employee pension benefit plan" within the meaning of §3(2)(A) of ERISA, 29 U.S.C. §1002(2)(A). The Fund is administered at 14 New England Executive Park, Burlington, Massachusetts, within this judicial district.

6.     Plaintiff James Merloni, Jr. is a Trustee of the Massachusetts Laborers' Legal Services Fund. The Massachusetts Laborers' Legal Services is an "employee welfare benefit

plan" within the meaning of §3(1) of ERISA, 29 U.S.C. §1002(1). The Fund is administered at 14 New England Executive Park, Burlington, Massachusetts, within this judicial district.

7.    Plaintiff Paul J. McNally is a Trustee of the New England Laborers' Training Trust Fund. The New England Laborers' Training Trust Fund is an "employee welfare benefit plan" within the meaning of §3(1) of ERISA, 29 U.S.C. §1002(1). The Fund is administered at 37 East Street, Hopkinton, Massachusetts, within this judicial district.

8.    The Health and Welfare, Pension, Annuity, Legal Services and Training Funds are multi-employer plans within the meaning of §3(37) of ERISA, 29 U.S.C. §1002(37). They are hereinafter collectively referred to as "the Funds."

9.    Defendant Spencer White & Prentis Foundation Corp. (hereinafter "Spencer" or "the Employer") is a Florida corporation with a principal place of business at 1280 N. Congress Avenue, Suite #206, West Palm Beach, Florida, and is an employer engaged in commerce within the meaning of §3(5) and (12) of ERISA, 29 U.S.C. §1002(5) and (12).

10.    Defendant Brian LaRue (hereinafter "LaRue") is an individual residing at 5812 Whirlaway Road, Palm Beach Gardens, Florida. Upon information and belief, LaRue is the owner of Spencer and exercises control and discretion over the company's payroll.

11.    Reach-and-Apply Defendant J. DeRenzo Construction Company, Inc. (hereinafter "DeRenzo") is a Massachusetts corporation with a principal place of business at 43 Charles Street, Needham, Massachusetts. Upon information and belief, Spencer has been working as a subcontractor to DeRenzo on recent projects. The Funds have a legal or equitable interest in any payments due Spencer from DeRenzo for work conducted on these projects.

12.    Reach-and-Apply Defendant Horton Construction, Inc. (hereinafter "Horton") is a Massachusetts corporation with a principal place of business at 205 North Avenue, Taunton,

Massachusetts. Upon information and belief, Spencer has been working as a subcontractor to Horton on recent projects. The Funds have a legal or equitable interest in any payments due Spencer from Horton for work conducted on these projects.

13.    Reach-and-Apply Defendant Mansour Construction, Inc. (hereinafter "Mansour") is a New Hampshire corporation with a principal place of business at 64 Tidemill Road, Greenland, New Hampshire. Upon information and belief, Spencer has been working as a subcontractor to Mansour on recent projects. The Funds have a legal or equitable interest in any payments due Spencer from Mansour for work conducted on these projects.

14.    Reach-and-Apply Defendant O'Connor Constructors, Inc. (hereinafter "O'Connor") is a Massachusetts corporation with a principal place of business at 45 Industrial Drive, Canton, Massachusetts. Upon information and belief, Spencer has been working as a subcontractor to O'Connor on recent projects. The Funds have a legal or equitable interest in any payments due Spencer from O'Connor for work conducted on these projects.

15.    Reach-and-Apply Defendant M. DeMatteo Construction Co. (hereinafter "DeMatteo") is a Massachusetts corporation with a principal place of business at 131 Messina Drive, Braintree, Massachusetts. Upon information and belief, Spencer has been working as a subcontractor to DeMatteo on recent projects. The Funds have a legal or equitable interest in any payments due Spencer from DeMatteo for work conducted on these projects.

16.    Reach-and-Apply Defendant Blakeslee Arapaia Chapman, Inc. (hereinafter "Blakeslee") is a Connecticut corporation with a principal place of business at 200 North Branford Road, Branford, Connecticut. Upon information and belief, Spencer has been working as a subcontractor to Blakeslee on recent projects. The Funds have a legal or equitable interest in any payments due Spencer from Blakeslee for work conducted on these projects.

17. Upon information and belief, Bank of America is a banking institution holding assets of the defendant.

18. Upon information and belief, Citizens Bank is a banking institution holding assets of the defendant.

## GENERAL ALLEGATIONS OF FACT

19. On or about April 1, 1993, defendant Spencer agreed in writing to be bound to the terms of the Restated Agreements and Declarations of Trust establishing Plaintiff Funds, to the terms of a collective bargaining agreement requiring contributions to Plaintiff Funds; and to any successor agreements. A copy of Spencer's signed agreement ("short form agreement") is attached hereto as Exhibit A.

20. Because of the short form agreement, Spencer has been a party to successive collective bargaining agreements, including the agreement which is effective from June, 2004 through May, 2007 ("Agreement"). A copy of the relevant portions of this Agreement is attached hereto as Exhibit B.

21. The Agreement, like its predecessor agreements, requires employers to make contributions to Plaintiff Funds for each hour worked by covered employees. The Agreement specifies the amount to be contributed by an employer to each of Plaintiff Funds for each hour worked. Employers are also required to file monthly Remittance Reports, on which employers calculate the payments they owe.

22. Section 4.5 of the Restated Agreement and Declaration of Trust of the Health and Welfare Fund, which is incorporated by reference into Exhibits A and B hereto, provides as follows:

Production of Records

Each Employer shall properly furnish to the Trustees, on demand, the names of his Employees, their Social Security numbers, the hours worked by each Employee and such other information as the Trustees may reasonably require in connection with the administration of the Trust Fund and for no other purpose.

The Trustees may by their auditor or other representatives, examine the pertinent employment and payroll records and such other records necessary to establish accurately the correct payments and the correct hours upon which contributions should be based of each Employer at the Employer's place of business whenever such examination is deemed necessary or advisable by the Trustees in connection with the proper administration of the Trust Fund and of the contracts or policies of insurance.

## COUNT I - VIOLATION OF ERISA
## BY SPENCER WHITE & PRENTIS FOUNDATION CORP. -
## DELINQUENT CONTRIBUTIONS

23.    Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1-22 supra.

24.    Spencer performed work under the terms of its collective bargaining agreement between June, 2004 through November, 2004 but failed to pay all contributions due for work performed during that period.

25.    The Funds have determined through remittance reports and other records that Spencer owes $29,784.43 in fringe benefit contributions for the work performed between June and August, 2004. Further, Spencer owes an as yet unliquidated amount in contributions for the period September through November, 2004. Spencer has failed to remit payroll records for this period of time.

6

26.     The Funds' counsel sent a demand letter to Spencer via certified mail on January 6, 2005, seeking payment in full of the contributions and interest owed. No response has been received to date.

27.     Thus, Spencer has failed and refused to pay the $29,784.43 it owes in fringe benefit contributions for the period June through August, 2004, along with the as yet unliquidated amount in contributions owed for the period September through November, 2004.

28.     The failure of Spencer to make contributions on behalf of all covered employees as required by the terms of the Funds and the collective bargaining agreement violates §515 of ERISA, 29 U.S.C. §1145.

29.     Absent an order from this Court, the defendant will continue to refuse to pay the monies it owes to the Funds and will continue to refuse to submit Remittance Reports, and the Funds and their participants will be irreparably damaged.

30.     A copy of this Complaint is being served upon the Secretary of Labor and the Secretary of the Treasury by certified mail as required by §502(h) of ERISA, 29 U.S.C. §1132(h).

**WHEREFORE,** Plaintiffs request this Court to grant the following relief on Count I:

a.     Order the attachment by trustee process of the bank accounts of Spencer held by Bank of America and Citizens Bank;

b.     Order the attachment of the machinery, inventory and accounts receivable of defendant Spencer;

c.     Order Spencer to make available to the Funds or their duly authorized representative all of its payroll records, including, but not limited to, file copies of contribution reports, payroll tax returns, employees' earning records, weekly payroll registers, certified payrolls, cash disbursement journals and a complete listing of all job locations for the period

September, 2004 until the date of the Court's order for the purpose of ascertaining the amounts, if any, of unpaid contributions;

    d.     Enter a preliminary and permanent injunction enjoining  from refusing or failing to make contributions to Plaintiff Funds and from refusing or failing to permit Plaintiff Funds to audit the payroll records as prayed for in the preceding paragraph;

    e.     Enter judgment in favor of the Plaintiff Funds in the amount of $29,784.43 plus any additional amounts determined by the Court to be owed by Spencer or which may become due during the pendency of this action, together with interest on the unpaid contributions at the rate prescribed under §6621 of the Internal Revenue Code, liquidated damages in an amount equal to 20 percent of the total of unpaid contributions or the total interest owed, whichever is greater, reasonable attorneys' fees, and costs, all pursuant to 29 U.S.C. §1132(g)(2); and

    f.     Such further and other relief as this Court deems appropriate.

## COUNT II - RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ("RICO") CLAIM AGAINST BRIAN LARUE AND SPENCER WHITE & PRENTIS FOUNDATION CORP.

31.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 30 above.

32.    Spencer's corporate headquarters are located in West Palm Beach, Florida. However, upon information and belief, Spencer has branch offices in a number of other states, including Massachusetts, New Hampshire, and New Jersey.  One such branch office is located at 6 Colletti Lane, Swansea, Massachusetts.

33.    Upon information and belief, defendant LaRue operates in the usual course of business solely out of his company's headquarters in West Palm Beach, Florida.  Further, upon information and belief, the company's Massachusetts-based projects during the months of June

through November, 2004 were coordinated, in part, from its Swansea, Massachusetts office or from the various Massachusetts-based Spencer job sites themselves.

34.    Further, the short form agreement Spencer signed with the Funds on or about April 1, 1993, making the company signatory to the collective bargaining agreement, lists the Swansea, Massachusetts address as its place of business.

35.    Spencer requested laborers from Massachusetts union locals to work on a number of projects within the Commonwealth during the period June through November, 2004. Laborers were provided to Spencer under the terms of the collective bargaining agreement. Spencer was then obligated to make contributions to Plaintiff Funds for each hour worked by the covered employees. Spencer was also required to file monthly Remittance Reports, on which it was to calculate the contributions owed.

36.    The Funds never received the contributions owed from Spencer for hours worked by its members. Additionally, the Funds did not receive remittance reports for hours worked between September and November, 2004.

37.    Upon information and belief, Florida-based LaRue and Massachusetts-based employees of Spencer would have used the telephone, electronic mail, and other such interstate wire communications to ascertain the hours worked by laborers on the Massachusetts jobs, to arrive at the intent to not pay contributions owed for such hours, and thereby, to defraud the Funds of thousands of dollars of assets. This alleged scheme injured the Funds' members by denying them their hard-earned and contractually-obligated benefits.

38.    By engaging in this alleged conduct, LaRue and Spencer caused sounds and/or signals to be transmitted by means of wire in interstate commerce for the purpose of executing a

scheme to defraud the Funds. This alleged conduct is an act of wire fraud that is indictable under 18 U.S.C. § 1343.

39.     Further, by failing to provide contractually-mandated fringe benefit contributions for the period June through November, 2004, LaRue and Spencer have stolen, or unlawfully and willfully abstracted or converted to their own use, money, funds, credits, and property of the Fund. This offense is indictable under 18 U.S.C. § 664.

40.     Spencer is an "enterprise" within the meaning of 18 U.S.C. §1961(4).

41.     By its conduct alleged in the preceding paragraphs, LaRue and Spencer have directly and indirectly conducted Spencer's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

42.     As a direct result of the violation of 18 U.S.C. § 1962(c) by LaRue and Spencer, the Funds have been injured through August, 2004 in the amount of $29,784.43 and in an as yet unliquidated amount for the period September through November, 2004.

**WHEREFORE**, Plaintiffs request this Court to grant the following relief on Count II:

a.     Enter judgment in favor of the Plaintiff Funds in the amount of $89,353.29, representing mandatory treble damages under 18 U.S.C. 1964(c) of the $29,784.43 injury caused by the Defendants for the period June through August, 2004, and in an additional amount representing treble damages from September, 2004 until judgment in an amount to be determined by the Court, or such other sum as may be due at judgment as determined by the Court, plus interest, costs, and attorneys' fees; and

b.     Such further and other relief as this Court deems appropriate.

## COUNT III - REACH-AND-APPLY AGAINST
## J. DERENZO CONSTRUCTION COMPANY, INC.

43.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 42 above.

44.     Upon information and belief, Spencer has been working as a subcontractor to DeRenzo on recent projects. Specifically, Spencer worked as a subcontractor to DeRenzo on a job at Boston University in Boston, Massachusetts. The Funds have a legal or equitable interest in any payments due Spencer from DeRenzo for work conducted on the Boston University job and any other projects.

45.     Further, there is no known insurance available to satisfy the judgment the Funds will obtain against Spencer.

46.     The funds held by DeRenzo cannot be attached or taken on execution except pursuant to G.L. c. 214, §3(6).

**WHEREFORE**, Plaintiffs request this Court to grant the following relief on Count III:

a.     Enter a temporary restraining order against DeRenzo and its agents, servants, employees, attorneys, and upon those persons in active participation or concert with them and those persons acting at their command who receive actual notices of this order by personal service or otherwise, and each and every one of them, from secreting, concealing, destroying, damaging, selling, transferring, pledging, encumbering, assigning, or in any way or manner disposing of or reducing the value of, or making any payment to Spencer on account of sums that are due or will hereafter become due Spencer from DeRenzo;

b.     After notice and a hearing, enter an Order containing prayer 'a' or entering prayer 'a' as a preliminary injunction; and

c.    Such further and other relief as this Court deems appropriate.

## COUNT IV - REACH-AND-APPLY AGAINST
## HORTON CONSTRUCTION, INC.

47.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 46 above.

48.    Upon information and belief, Spencer has been working as a subcontractor to Horton on recent projects. Specifically, Spencer worked as a subcontractor to Horton on a job at Brayton Point Station in Somerset, Massachusetts. The Funds have a legal or equitable interest in any payments due Spencer from Horton for work conducted on the Brayton Point Station job and any other projects.

49.    Further, there is no known insurance available to satisfy the judgment the Funds will obtain against Spencer.

50.    The funds held by Horton cannot be attached or taken on execution except pursuant to G.L. c. 214, §3(6).

**WHEREFORE**, Plaintiffs request this Court to grant the following relief on Count IV:

a.    Enter a temporary restraining order against Horton and its agents, servants, employees, attorneys, and upon those persons in active participation or concert with them and those persons acting at their command who receive actual notices of this order by personal service or otherwise, and each and every one of them, from secreting, concealing, destroying, damaging, selling, transferring, pledging, encumbering, assigning, or in any way or manner disposing of or reducing the value of, or making any payment to Spencer on account of sums that are due or will hereafter become due Spencer from Horton;

b.      After notice and a hearing, enter an Order containing prayer 'a' or entering prayer 'a' as a preliminary injunction; and

c.      Such further and other relief as this Court deems appropriate.

## COUNT V - REACH-AND-APPLY AGAINST MANSOUR CONSTRUCTION, INC.

51.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 50 above.

52.     Upon information and belief, Spencer has been working as a subcontractor to Mansour on recent projects. Specifically, Spencer worked as a subcontractor to Mansour on a job at Kingsbury Hall at the University of New Hampshire in Durham, New Hampshire. The Funds have a legal or equitable interest in any payments due Spencer from Mansour for work conducted on the University of New Hampshire job and any other projects.

53.     Further, there is no known insurance available to satisfy the judgment the Funds will obtain against Spencer.

54.     The funds held by Mansour cannot be attached or taken on execution except pursuant to G.L. c. 214, §3(6).

**WHEREFORE**, Plaintiffs request this Court to grant the following relief on Count V:

a.      Enter a temporary restraining order against Mansour and its agents, servants, employees, attorneys, and upon those persons in active participation or concert with them and those persons acting at their command who receive actual notices of this order by personal service or otherwise, and each and every one of them, from secreting, concealing, destroying, damaging, selling, transferring, pledging, encumbering, assigning, or in any way or manner

13

disposing of or reducing the value of, or making any payment to Spencer on account of sums that are due or will hereafter become due Spencer from Mansour;

b.       After notice and a hearing, enter an Order containing prayer 'a' or entering prayer 'a' as a preliminary injunction; and

c.       Such further and other relief as this Court deems appropriate.

## COUNT VI - REACH-AND-APPLY AGAINST O'CONNOR CONSTRUCTORS, INC.

55.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 54 above.

56.     Upon information and belief, Spencer has been working as a subcontractor to O'Connor on recent projects. Specifically, Spencer worked as a subcontractor to O'Connor on a job at Brayton Point Station in Somerset, Massachusetts. The Funds have a legal or equitable interest in any payments due Spencer from O'Connor for work conducted on the Brayton Point Station job and any other projects.

57.     Further, there is no known insurance available to satisfy the judgment the Funds will obtain against Spencer.

58.     The funds held by O'Connor cannot be attached or taken on execution except pursuant to G.L. c. 214, §3(6).

**WHEREFORE**, Plaintiffs request this Court to grant the following relief on Count VI:

a.       Enter a temporary restraining order against O'Connor and its agents, servants, employees, attorneys, and upon those persons in active participation or concert with them and those persons acting at their command who receive actual notices of this order by personal service or otherwise, and each and every one of them, from secreting, concealing, destroying,

damaging, selling, transferring, pledging, encumbering, assigning, or in any way or manner disposing of or reducing the value of, or making any payment to Spencer on account of sums that are due or will hereafter become due Spencer from O'Connor;

      b.      After notice and a hearing, enter an Order containing prayer 'a' or entering prayer 'a' as a preliminary injunction; and

      c.      Such further and other relief as this Court deems appropriate.

## COUNT VII - REACH-AND-APPLY AGAINST
## M. DEMATTEO CONSTRUCTION CO.

      59.      Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 58 above.

      60.      Upon information and belief, Spencer has been working as a subcontractor to DeMatteo on recent projects. The Funds have a legal or equitable interest in any payments due Spencer from DeMatteo for work conducted on these projects.

      61.      Further, there is no known insurance available to satisfy the judgment the Funds will obtain against Spencer.

      62.      The funds held by DeMatteo cannot be attached or taken on execution except pursuant to G.L. c. 214, §3(6).

      **WHEREFORE**, Plaintiffs request this Court to grant the following relief on Count VII:

      a.      Enter a temporary restraining order against DeMatteo and its agents, servants, employees, attorneys, and upon those persons in active participation or concert with them and those persons acting at their command who receive actual notices of this order by personal service or otherwise, and each and every one of them, from secreting, concealing, destroying, damaging, selling, transferring, pledging, encumbering, assigning, or in any way or manner

15

disposing of or reducing the value of, or making any payment to Spencer on account of sums that are due or will hereafter become due Spencer from DeMatteo;

      b.      After notice and a hearing, enter an Order containing prayer 'a' or entering prayer 'a' as a preliminary injunction; and

      c.      Such further and other relief as this Court deems appropriate.

## COUNT VIII - REACH-AND-APPLY AGAINST BLAKESLEE ARAPAIA CHAPMAN, INC.

63.      Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 62 above.

64.      Upon information and belief, Spencer has been working as a subcontractor to Blakeslee on recent projects. Specifically, Spencer worked as a subcontractor to Blakeslee on a job in Bridgeport, Connecticut. The Funds have a legal or equitable interest in any payments due Spencer from Blakeslee for work conducted on the Bridgeport, Connecticut job and any other projects.

65.      Further, there is no known insurance available to satisfy the judgment the Funds will obtain against Spencer.

66.      The funds held by Blakeslee cannot be attached or taken on execution except pursuant to G.L. c. 214, §3(6).

**WHEREFORE**, Plaintiffs request this Court to grant the following relief on Count VIII:

      a.      Enter a temporary restraining order against Blakeslee and its agents, servants, employees, attorneys, and upon those persons in active participation or concert with them and those persons acting at their command who receive actual notices of this order by personal service or otherwise, and each and every one of them, from secreting, concealing, destroying,

damaging, selling, transferring, pledging, encumbering, assigning, or in any way or manner

disposing of or reducing the value of, or making any payment to Spencer on account of sums that

are due or will hereafter become due Spencer from Blakeslee;

b.     After notice and a hearing, enter an Order containing prayer 'a' or entering prayer

'a' as a preliminary injunction; and

c.     Such further and other relief as this Court deems appropriate.

Respectfully submitted,

PAUL J. MCNALLY, as he is
TRUSTEE, MASSACHUSETTS
LABORERS' HEALTH AND WELFARE
FUND, et al,

By their attorneys,

Anne R. Sills, Esquire
BBO #546576
Gregory A. Geiman
BBO #655207
Segal, Roitman & Coleman
11 Beacon Street
Suite #500
Boston, MA  02108
(617) 742-0208

Dated:  February _17_, 2005

GAG/gag&ts
ARS 6306 04-558/complt.doc

17

Massachusetts Laborers' District Council Agreement

Acceptance of Agreement(s)
and
Declarations of Trust

The Undersigned Employer has read and hereby approves the
following Agreement(s):

   (1)  by and between the Associated General Contractors
Association of Massachusetts, Inc. and the Building Trades
Employers' Association of Boston and Eastern Massachusetts, Inc.

   (2)  by and between the General Contractors' Association of
Pittsfield, Massachusetts, Inc.,

   (3)  by and between the Labor Relations Division of the
Construction Industries of Massachusetts, Inc.,

   (4)  by and between the Master Plasterers' Association of
Boston and Vicinity,

   (5)  by and between the Construction Industries Association
of Western Massachusetts, Inc.

   (6)  by and between the Foundation and Marine Contractors'
Association of New England, Inc.

and the Massachusetts Laborers' District Council on behalf of
its affiliates of the Laborers' International Union of North
America, AFL-CIO, all said Agreements being effective from June
1, 1991 through May 31, 1994  and any successor agreements
between the parties and herewith accepts the same and becomes
one of the parties thereto and agrees to abide by all its terms
and conditions.  [Circle above numbered Agreements(s) pertaining
to your Company and initial].

1.  The life of this Agreement is to be co-extensive with the
terms set out or as they shall be set out from time to time in
the aforementioned Collective Bargaining Agreement(s) with the
above-named Associations and shall continue in effect unless the
Employer gives the Union notice of desired change or termination
of a particular Collective Bargaining Agreement in keeping with
the applicable notice provisions contained therein.

2.  This Agreement binds the Employer to all obligations of an
Employer as set forth in the above referred to Agreements and
applies to all Laborers' work and geographical jurisdictions as
set forth therein unless specifically limited, in writing, on
this document.



RECEIVED
JUL 29 1993

3.   The said Agreements provide among other conditions, contri-butions to the Massachusetts Statewide Laborers' Health & Welfare Fund, Massachusetts Statewide Laborers' Pension Fund, New England Laborers' Training Fund, New England Laborers' Labor-Management Cooperation Trust Fund, Massachusetts Legal Services Fund and Massachusetts Laborers' Statewide An-nuity Fund and Dues Deduction Fund and the Employer agrees to be bound by the foregoing Agreements and Declaration of Trust and hereby irrevocably designates as its representatives on the Boards of Trustees such Trustees as are named in said Agree-ments as Employer Trustees together with their successors selected in the manner provided within said Agreements and agree to be bound by all actions taken by said Employer Trustees pursuant to the said Agreements and declaration of Trust and agrees that it may be sued by any of said Funds, or the Trustees thereof, for non-payment of contributions or non-performance of its obligations thereunder.

4.   The said Agreements further require contributions to the Construction Industries of Massachusetts Advancement Fund, the Western Massachusetts Industry Advancement Fund and the Massachusetts Construction Advancement Program, as applicable, for their Association Industry Programs and payment to the Massachusetts Laborers' District Council of Union Dues deducted from net pay in accordance with the voluntary written authori-zation of employees.  The Employer agrees that it may be sued by said Associations or by the District Council, as appropriate, for non-compliance with or non-performance of said obligations.

5.   Inasmuch as the Union has submitted proof and the Employer is satisfied that the Union represents a majority of its employees in the bargaining unit described herein, the Employer recognizes the Union as the exclusive Collective Bargaining Agent for all employees within that bargaining unit, on all present and future jobsites within the jurisdiction of the Union, unless and until such time as the Union loses its status as the employees' exclusive representative as a result of an NLRB election requested by the employees.  The Employer agrees that it will not request an NLRB election and expressly waives any right it may have to do so.

6.   If the Union has not yet submitted a demonstration of its majority support, the Employer agrees that, upon the Union's presentation of evidence of majority status among its employees in the bargaining unit described herein, it will voluntarily recognize the Union as the exclusive bargaining agent for all employees within that bargaining unit on all present and future jobsites within the jurisdiction of the Union.  The Employer expressly waives any right it has to condition its recognition of the Union upon the Union's certification by the NLRB as the employees' bargaining representative following an NLRB election.

[Cross out and place your initials beside paragraph 5 or paragraph 6, whichever does not apply.  Do NOT cross both paragraphs.]

7.  This instrument shall be binding upon the Employer named herein, and its' successors and assigns, and no provisions contained or incorporated herein shall be nullified or affected in any manner as a result of any consolidations, sale, transfer, assignment, joint venture or any combination or other disposition of the undersigned Employer.

# 51467

APRIL 1

~~March 30~~, 1993
_____
Date

Union Witness to Employer's Signature:

_____
Name and Title
Joseph P. Pavone, Jr. Field Rep.
Massachusetts Laborers' District Council
_____
Affiliation (Council or Local)


7 Laborers' Way
_____
Address

Hopkinton,         MA         01748
_____
City          State          Zip

Employer:
Spencer, White & Prentis
Foundation Corporation
_____
Company Name (Please print)

Brian LaRue, President
_____
Name & Title of Authorized
Rep. (Please print or type)

_____
Signature of Authorized Rep.


_____
Place of Business Address
6 Colletti Lane
_____
Swansea, MA  02777
_____


_____
Mailing Address if different

_____
_____
_____

Telephone # 1-508-675-6511
Fax# 1-508-675-6517


Please forward one (1) executed copy to:

Mass. Laborers' District Council
7 Laborers' Way
Hopkinton, MA 01748

BUILDING AND SITE CONSTRUCTION AGREEMENT

between

MASSACHUSETTS LABORERS' DISTRICT COUNCIL

of the

LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
AFL-CIO

and

THE LABOR RELATIONS DIVISION OF THE
ASSOCIATED GENERAL CONTRACTORS OF MASSACHUSETTS, INC.

and

BUILDING TRADES EMPLOYERS' ASSOCIATION OF
BOSTON AND EASTERN MASSACHUSETTS, INC.



EFFECTIVE:
JUNE 1, 2000 - MAY 31, 2004

*Section 2.*    Employees shall furnish their Employer with current telephone number or other contact at the start of each job, and advise the Employer of any subsequent change or changes in such contact during the course of the job.

*Section 3.*    Any employee who reports for work, and for whom work is provided, regardless of the time he works, shall receive the equivalent of not less than four (4) hours pay at the regular straight time hourly rate provided he is available for work throughout such period.

*Section 4.*    Any employee who reports for work and who works four (4) or more hours in any one (1) day shall receive the equivalent of not less than eight (8) hours pay at the regular straight time hourly rate provided that he is available for work until the end of that regular work day.

*Section 5.*    It is expressly provided, however, that if the employee leaves the job site without permission of the Employer, or when a person refuses to work or continue to work, or when work stoppages brought about by a third party or parties prevent or make ill-advised, in the opinion of the Employer, the performance or continuance of work, or when weather makes work impractical, payment for time not actually worked shall not be required.

*Section 6.*    Where notification of the men is required under this Agreement to the effect that work shall not be performed on a particular day, notification of such fact to the steward shall be sufficient notification to the men, provided the steward is permitted enough time during working hours to notify the men.

## ARTICLE VIII
## CHECK OFF AND PAYROLL DEDUCTION

*Section 1.*    The Employer agrees to deduct the sum of seventy cents ($.70) per hour for each hour worked from the weekly wages, after taxes, of each employee, provided, such employee has executed voluntary written authorization for such deductions to be allocated as follows:

a)  Sixty-eight cents ($.68) shall be used as hourly membership dues to support the Local Unions and the Massachusetts Laborers' District Council.

15

b) Two cents ($.02) of the amount provided in Section 1 shall be used as a voluntary contribution payable to the Laborers' Political League (LPL) to enable the Massachusetts Laborers' District Council and its affiliated Local Unions to participate more fully in matters affecting the welfare of its members.

*Section 2.*    A sample authorization for such deductions is as follows:

### Deduction Authorization

To all Employers by whom I am employed during the terms of the present or future collective bargaining agreements either by and between signatory contractor associations and the Massachusetts Laborers' District Council of the Laborers' International Union of North America, AFL-CIO and its affiliates, or by an Employer, not a member of said associations, which has an individual collective bargaining agreement with the Council and its affiliates.

### Dues Deduction

I hereby authorize my Employer to deduct from my wages each week, sixty-eight cents ($.68) per hour for each hour worked to constitute what are known as the hourly deductions as part of my membership dues for said week owing by me to the Union.

### Laborers' Political League Fund

I further authorize the Employer to deduct the sum of two cents ($.02) per hour for each hour worked as a voluntary contribution to the Laborers' Political League (LPL), which I understand constitutes a separate aggregate fund used for the purposes allowed under the Federal Election Campaign Act, 2 U.S.C., Sec. 441b.

This authorization and assignment shall become effective on or after June 1, 2000 and shall continue in full force and effect for a period not to exceed one (1) year or the life of the existing agreement between the said Union or the Council acting on its behalf and yourself, whichever occurs sooner, and for any subsequent similar period thereafter unless revoked by me within fifteen (15) days immediately preceding such contract term or one (1) year, whichever occurs sooner. Notwithstanding the foregoing, the two cents ($.02) per hour deduction authorization for contribution to the LPL is subject to revocation at any time.

The above revocation must be in writing, bear the date and my signature,

16

to work each day of the seven (7) (or more) day schedule.

(b)    If Salamander heating units referred to above are to operate for more than two (2) full days but less than seven (7) full days, then four (4) six-hour (6 hour) shifts shall be established and employees so assigned shall be paid eight (8) hours pay for the six (6) hours worked on the shift.

## ARTICLE XI
## MASSACHUSETTS LABORERS' HEALTH and WELFARE FUND

*Section 1.*   Each Employer subscribes to and agrees to be bound by the Massachusetts Laborers' Health & Welfare Fund Agreement and Declaration of Trust and any amendments thereto and ratifies and approves all actions of the Trustees within the scope of said Agreement.

*Section 2.*   *Contributions to Fund*   Each Employer agrees to pay the sum reflected in Appendix A of this Agreement, per hour for each hour worked by each employee, covered by the terms of this Agreement, to the Massachusetts Laborers' Health and Welfare Fund.  Said sum will be paid into said Fund not later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll of the preceding calendar month.  The said Fund will be administered by a Board of Trustees selected and appointed under the provisions of the Trust Agreement executed by the Union and the Employers.   Said Trust Agreement shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States, the Commonwealth of Massachusetts and the State of New Hampshire.   The said Fund will be used to purchase accident and sickness disability insurance and hospitalization, medical and surgical benefits and/or other welfare benefits of a similar nature for the said employees as provided in the said Trust Agreement.

The Union reserves the right to remove the employees whose wages, hours and working conditions as set forth in this Agreement from any job for which the Employer has failed to remit to the aforementioned Health and Welfare Fund monies due to the Fund within the time for payment thereof, as determined by the Board of Trustees acting under the authority of the Agreement and Declaration of Trust under which the Fund operates.

21

The failure to contribute by the Employer to the said Health and Welfare Fund, as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XX herein. The Massachusetts Laborers' Health and Welfare Fund shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

*Section 3.    New Federal Health Insurance Law*    In the event that a new federal health insurance law becomes effective during the term of this Agreement, the parties agree to meet and reopen the contract to make any changes necessitated by the law and to negotiate other provisions as may be appropriate. In the event the parties are unable to agree upon the changes required by law or other appropriate changes, the matter may proceed to final and binding arbitration pursuant to Article XXVI at the request of either party; provided that the Arbitrator shall not be permitted to increase the cost to the Employer.

## ARTICLE XII
## NEW ENGLAND LABORERS' HEALTH and SAFETY FUND

*Section 1.*    Each Employer subscribes to and agrees to be bound by the Massachusetts Laborers' Health & Safety Fund Agreement and Declaration of Trust and any amendments thereto and ratifies and approves all actions of the Trustees within the scope of said Agreement.

*Section 2.*    Each Employer agrees to pay the sum reflected in Appendix A of this Agreement, per hour for each hour worked by each employee covered by the terms of this Agreement to the New England Laborers' Health and Safety Fund.

*Section 3.*    Said sum shall be paid into the Fund no later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under and subject to the provisions of a Trust Agreement and Plan entered into by the Union and the Employers.

*Section 4.*    The Plan and Trust shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and states where this Agreement applies. The Trust and Plan

22

at all times shall be a "qualified" Trust and Plan as defined by Sec. 401 of the Internal Revenue Code. The Plan and Trust shall be created and administered, subject to modification, change of methods or administration and practices as may be required to the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary expense of doing business in the computation of Federal Income Tax of the Employers

**Section 5.** The failure to contribute by the Employer to the said Health and Safety Fund, as provided herein, for the purpose of remedy the Union may pursue, as covered in Article XX herein. The New England Laborers' Health and Safety Fund shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

## ARTICLE XIII
## MASSACHUSETTS LABORERS' PENSION FUND

Each Employer subscribes to and agrees to be bound by the Massachusetts Laborers' Pension Fund Agreement and Declaration of Trust and any amendments thereto and ratifies and approves all actions of the Trustees within the scope of said Agreement.

Each Employer agrees to pay the sum reflected in Appendix A of this Agreement, per hour for each hour worked by each employee, covered by the terms of this Agreement to the Massachusetts Laborers' Pension Fund. Said sum will be paid into said Fund not later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under, and subject to the provisions of a Trust Agreement and Plan entered into by the Union and the Employers. The Plan and the Trust shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States, the Commonwealth of Massachusetts and the State of New Hampshire.

The Trust and Plan at all times shall be a "qualified" Trust and Plan, as defined by Section 401 of the Internal Revenue Code. The Plan and the Trust shall be created and administered, subject to modification, change of methods of administration and practices as may be required, to the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary

expense of doing business in the computation of Federal Income Tax of the Employers.

The failure to contribute by the Employer to the said Pension Fund, as provided herein, for the purpose of the remedy the Union may pursue is covered in Article XX herein. The Massachusetts Laborers' Pension Fund shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

## ARTICLE XIV
## NEW ENGLAND LABORERS' TRAINING TRUST FUND

Each Employer subscribes to and agrees to be bound by the Massachusetts Laborers' Training Trust Fund Agreement and Declaration of Trust and any amendments thereto and ratifies and approves all actions of the Trustees within the scope of said Agreement.

Each Employer agrees to pay the sum reflected in Appendix A of this Agreement, per hour for each hour worked by each employee covered by the terms of this Agreement, to a Training Fund known as New England Laborers' Training Trust Fund. Said sum will be paid into said Fund not later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under, and subject to the provisions of a Trust Agreement and Plan entered into by the Union and the Employers. The Plan and Trust shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and the Commonwealth of Massachusetts and the State of New Hampshire. The Trust and Plan at all times shall be a "qualified" Trust and Plan as defined by Section 401 of the Internal Revenue Code. The Plan and Trust shall be created and administered, subject to modification, change of methods or administration and practices as may be required to the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary expense of doing business in the computation of Federal Income Tax of the Employers.

The failure to contribute by the Employer to the said Training Fund as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XX, herein. The New England Laborers' Training Trust Fund shall

meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

## ARTICLE XV
## MASSACHUSETTS LABORERS' LEGAL SERVICES FUND

*Section 1.*  Each Employer subscribes to and agrees to be bound by the Massachusetts Laborers' Legal Services Fund Agreement and Declaration of Trust and any amendments thereto and ratifies and approves all actions of the Trustees within the scope of said Agreement.

*Section 2.*  Each Employer agrees to pay the sum reflected in Appendix A of this Agreement, per hour for each hour worked by each employee, covered by this Agreement to the Massachusetts Laborers' Legal Services Fund.  Said contributions will be paid into such Fund not later than the twentieth (20th) day of each and every month for the hours worked by said employees up to the end of the last completed payroll period of the preceding calendar month.  The failure to contribute to this Fund by the Employer as provided herein shall be subject to the provisions of Article XX hereof.  The Massachusetts Laborers' Legal Services Fund shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

## ARTICLE XVI
## MASSACHUSETTS LABORERS' ANNUITY FUND

*Section 1.*  Each Employer subscribes to and agrees to be bound by the Massachusetts Laborers' Annuity Fund Agreement and Declaration of Trust and any amendments thereto and ratifies and approves all actions of the Trustees within the scope of said Trust Agreement.

*Section 2.*  Each Employer agrees to pay for each hour worked by each employee, covered by this Agreement, to the Massachusetts Laborers' Annuity Fund, the negotiated contribution in each respective zone and any future allocated increase during the term of this agreement (reflected in Appendix A of this Agreement).  Said sums will be paid into said Fund not later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll of the preceding calendar month.  Payment shall be made in one check and on the same form furnished by the Massachusetts Laborers' Benefit Funds.  The said Fund will be administered by a Board of

Trustees selected and appointed under the provisions of the Trust Agreement executed by the Union and the Employers. Said Trust Agreement shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States, the Commonwealth of Massachusetts and the State of New Hampshire.

*Section 3.*    Members of the Association and Employers subscribing to the Trust Agreement, when working outside the jurisdictional area of this Agreement in areas where they have no contractual obligation to contribute to an annuity fund, shall contribute the same amount in the same manner as set forth above to the "Massachusetts Laborers' Annuity Fund" for each Laborer when said Laborer is sent and put to work by the Employer from the territorial jurisdiction set forth in Article I.

*Section 4.*    Failure to contribute to the Fund shall be a violation of this Agreement. The Union and the Employer mutually recognize the requirement that contributions to this Fund be made on a current basis by all Employers who have made one or more contributions to the Fund or have entered into an agreement with the Union requiring such contributions.

*Section 5.*    If an audit by the Trustees or their representatives determines that an Employer has not correctly reported the hours worked by his Laborers, the Employer, in addition to other remedies provided in the Trust Agreement, shall be liable to the Fund for the cost of auditing his payroll records and for interest at the rate of ten percent (10%) per annum from the date when payment was due to the date when payment was made.

*Section 6.*    The Fund shall be used to provide benefits as determined by the Trustees in accordance with the terms of the Trust. The failure to contribute by the Employer to the said Annuity Fund, as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XX herein. The Massachusetts Laborers' Annuity Fund shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

26

## ARTICLE XVII
## NEW ENGLAND LABORERS' LABOR-MANAGEMENT COOPERATION TRUST

*Section 1.* Each Employer subscribes to and agrees to be bound by the New England Laborers' Labor-Management Cooperation Trust Agreement and Declaration of Trust and any amendments thereto and ratifies and approves all actions of the Trustees within the scope of said Agreement.

*Section 2.* Each Employer agrees to pay the sum reflected in Appendix A of this Agreement, per hour for each hour worked by an employee covered by this Agreement to the New England Laborers' Labor-Management Cooperation Trust Fund.

*Section 3.* Said sum will be paid into said Fund not later than the twentieth (20th) day of each month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under, and subject to the provisions of a Trust Agreement and Plan entered into by the Union and the Employer and others.

*Section 4.* The Plan and Trust conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and the Commonwealth of Massachusetts. The Trust and the Plan at all times shall be a "qualified" Trust and Plan, as defined by Section 401 of the Internal Revenue Code. The Plan and Trust shall be created and administered, subject to modification, change of methods of administration and practices as may be required to, the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary and necessary expense of doing business in the computation of Federal Income Tax of the Employers.

*Section 5.* The failure to contribute by the Employer to the said New England Laborers' Labor-Management Cooperation Trust Fund, as provided herein, for the purpose of the remedy the union may pursue, is covered in Article XX herein.

## ARTICLE XVIII
## MASSACHUSETTS CONSTRUCTION ADVANCEMENT PROGRAM

*Section 1.* Each Employer subscribes to and agrees to be bound by the Massachusetts Construction Advancement Program Agreement and Declaration of Trust and any amendments thereto and ratifies and approves all actions of the Trustees within the scope of said Agreement.

*Section 2.* This Trust, known as the Massachusetts Construction Advancement Program, shall be referred to in this Article as "the Fund". The Fund shall be administered solely and exclusively by Trustees appointed pursuant to the provisions of the Trust instrument.

*Section 3.* Each Employer agrees to pay the sum reflected in Appendix A of this Agreement, per hour for each hour worked by each of its employees, covered by this Agreement, to the Massachusetts Construction Advancement Program.

*Section 4.* The Fund will be used by its Trustees for the following express purposes: A. Manpower Recruitment and Training; B. Education; C. Safety and Accident Prevention; D. Public Relations; E. Equal Employment; F. Intra-Industry Relations; G. Market Development; H. Market Research; and I. Information Services within the construction industry for the mutual benefit of Employers and their employees.

*Section 5.* The Fund shall not be used for any of the following expressly prohibited purposes: A. Lobbying in support of anti-Union legislation; B. Supporting litigation before a court or any administrative body against the Union or any of its agents; and C. Subsidizing contractors during a period or periods of work stoppages or strikes.

*Section 6.* As a part of the administration of the Fund, there shall be an annual audit of the Fund by an independent certified public accountant. A copy of the audit shall be made available to all parties signatory hereto.

*Section 7.* In the event that the Union has reasonable cause to believe that the Fund is being used for any of the purposes prohibited by Section 5, the dispute shall be subject to the arbitration provisions of this Agreement.

28

## ARTICLE XIX
## MASSACHUSETTS LABORERS' UNIFIED TRUST

**Section 1.**   Each Employer subscribes to and agrees to be bound by the Massachusetts Laborers' Unified Trust Agreement and Declaration of Trust and any amendments thereto and ratifies and approves all actions of the Trustees within the scope of said Agreement.

**Section 2:**   Each Employer agrees to pay the sum reflected in Appendix A in this Agreement, per hour worked by each employee covered by the terms of this Agreement to a fund known as the "Massachusetts Laborers' Unified Trust".

**Section 3:**   Said sums will be paid into said Fund not later than the twentieth (20th) day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a board of Trustees selected under, and subject to the provisions of a Trust Agreement and plan entered into by the Union and the Employers. The plan and trust shall conform to the Labor-Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and the Commonwealth of Massachusetts. The trust and plan at all times shall be an exempt trust and plan, as defined by Section 401 of the Internal Revenue Code. The plan and trust shall be created and administered, subject to modification, change of methods of administration and practices as may be required, to the end that at all times contributions by the Employers to the Fund shall be deductible as an ordinary expense of doing business in the computation of federal income tax of the Employers.

**Section 4:**   There shall be a total of four (4) Trustees to constitute the Board of Trustees to administer the Fund.   Said Trustees to be appointed as follows:   two (2) Trustees shall be appointed by the Massachusetts Laborers' District Council and two (2) Trustees shall be appointed by the Association. The representatives on the Board of Trustees shall at all times be equally divided among Union and Management.   Each of the appointing parties shall have the power to remove, replace and appoint successors as Trustees appointed by them.

**Section 5:**   The failure to contribute by the Employer to the said Unified Trust, as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XX herein.   The Massachusetts Laborers' Unified Trust shall meet the requirements of all Federal and State Laws regarding the same, including the Internal Revenue Service.

29

## ARTICLE XX
## DELINQUENT PAYMENTS

*Section 1.* Employers who are delinquent in their payments to the Massachusetts Health & Welfare, Pension, Legal Services, Annuity, Unified Trust, New England Laborers' Labor-Management Cooperation Trust, Training Trust and Health & Safety Funds shall not have the privilege of employing Laborers under the terms of this Agreement if such payments have not been made after written notice, sent by registered mail, return receipt requested, of such delinquency is given by the Union and seventy-two (72) hours have elapsed since such notice. All employees affected by such delinquency to any of the above-mentioned Funds, and who have lost work as a result thereof, shall be paid their normal wages by the delinquent Employer, until said delinquency is cured and the employees resume their work.

Once an Employer has been adjudged a delinquent by any of the above-mentioned Fund Trustees, he shall, in addition to remitting to the Funds for his past delinquencies, be required to make his current payments on a weekly basis and further furnish a ten thousand dollar ($10,000) surety bond to the Trustees of each respect Fund as listed above. All attorney's fees, sheriff's costs, accounting and court costs involved to collect delinquent payments from the delinquent Employer, or to obtain an audit from an Employer who has refused to permit one, must be borne fully by the Employer involved.

*Section 2.* In accordance with Section 5.02(g)(2) of ERISA, as amended, the Trustees do establish the rate of interest to be paid by Employers on delinquent contributions to be the rate prescribed under Section 6621 of the Internal Revenue Code of 1954 (currently ten percent [10%] per annum); and further, liquidated damages shall be assessed in an amount of twenty percent (20%) of the amount of the delinquency, or such higher percentage as may be permitted under Federal or State Law, plus reasonable attorney's fees and costs of the action.

## ARTICLE XXI
## SEVERAL LIABILITY

*Section 1.* The obligation of each Employer member of the Associations shall be several and not joint. This Agreement shall be binding upon each Employer signatory hereto and its successors and assigns, and no provisions contained or incorporated herein shall be nullified or affected in any manner as a

result of any consolidations, sale, transfer, assignment, or any combination or other disposition of the Employer.

*Section 2.* The Massachusetts Laborers' District Council, a party to this Agreement, shall not be held responsible for any unauthorized act committed by any affiliated Local Union or members thereof, unless the said Massachusetts Laborers' District Council has ordered or ratified the same or condoned such act after notice thereof from either of the Associations. The Massachusetts Laborers' District Council agrees that upon the receipt of notice from either Association, parties to this Agreement, of any unauthorized act by a Local Union, it will exercise all of its authority to correct the same and furnish evidence thereof to the Association.

*Section 3.* The obligation of each Local Union, affiliated with the Massachusetts Laborers' District Council, shall be several and not joint.

*Section 4.* The Labor Relations Division of the Associated General Contractors of Massachusetts, Inc. and the Building Trades Employers' Association of Boston and Eastern Massachusetts, Inc. shall not be responsible for any unauthorized act committed by one of its members unless either of the Associations has ordered, ratified or condoned such act after notification thereof from the Council. The Associations agree that upon the receipt of such notice from the Council of any unauthorized act of a member contractor, it will exercise all of its authority to correct the same and furnish evidence thereof to the Council.

## ARTICLE XXII
## CONSTRUCTION MANAGER

Whenever any signatory contractor performs work as a construction manager, owner/builder, or solicits bids from subcontractors, considers proposals submitted by subcontractors, or coordinates work performed by subcontractors, it shall be deemed to be a general contractor subject to the terms and conditions of this Agreement, provided, however, that this provision shall not apply to any affiliated development company of a signatory contractor.

31

## ARTICLE XXXI
## TERMINATION OF AGREEMENT

This Agreement will expire on May 31, 2004, except that if neither party to this Agreement gives notice in writing to the other party on or before March 31, 2004 that it desires a change after May 31, 2004, then this Agreement will continue in effect until May 31, 2005 and so on each year thereafter unless on or before March 31st of each year thereafter, a notice is given by either party.

*LABOR RELATIONS DIVISON OF THE ASSOCIATED GENERAL CONTRACTORS OF MASSACHUSETTS*

_____     Date: __10/26/00_____
Chairman, Board of Trustees

*MASSACHUSETTS LABORERS' DISTRICT COUNCIL of the Laborers' International Union of North America on behalf of its affiliates*

_____     James V. Merloni_____
Business Manager, Paul J. McNally     President, James V. Merloni

Date: __10/26/00_____     Date: __10/26/00_____

*The Building Trades Employers' Assoc. of Boston & E. Mass., Inc.*

_____     Date: __11/26/00_____
Thomas Gunning, Executive Director

Witnessed:

_____
Armand E. Sabitoni, Vice-President & Regional Manager
& Assistant to the General President

Date: __10/26/2000_____

47

# APPENDIX A
## WAGE RATES AND CLASSIFICATIONS

*Section 1.*  Zone 1 and Zone 2 - Wage Rates and Benefit Allocations

*ZONE 1*     Suffolk County, the City of Cambridge, and those projects that are outside the geographic limit of Suffolk county but for which the work is primarily part of projects located in Suffolk County that are covered by project agreements.

*SUFFOLK COUNTY (Boston, Chelsea, Revere, Winthrop, Deer & Nut Islands)*

*MIDDLESEX COUNTY (Arlington, Belmont, Burlington, Cambridge, Everett, Malden, Medford, Melrose, Reading, Somerville, Stoneham, Wakefield, Winchester, Winthrop and Woburn only)*

*NORFOLK COUNTY (Brookline, Dedham and Milton only)*

*ZONE 2*     The remaining geographical area covered by the Eastern Massachusetts Laborers Agreement

*BARNSTABLE, BRISTOL, DUKES, ESSEX, NANTUCKET, PLYMOUTH and WORCESTER COUNTIES*

*MIDDLESEX COUNTY (With the exception of Arlington, Belmont, Burlington, Cambridge, Everett, Malden, Melrose, Reading, Somerville, Stoneham, Wakefield, Winchester, Winthrop and Woburn)*

*NORFOLK COUNTY (With the exception of Brookline, Dedham and Milton only)*

*FRANKLIN COUNTY (Warwick, and Orange only)*

The town of Salem in Rockingham County, New Hampshire.

54

ZONE 1    *SUFFOLK COUNTY* (Boston, Chelsea, Revere, Winthrop, Deer & Nut Islands

*MIDDLESEX COUNTY* (Arlington, Belmont, Burlington, Cambridge, Everett, Malden, Medford, Melrose, Reading, Somerville, Stoneham, Wakefield, Winchester, Winthrop and Woburn only)

*NORFOLK COUNTY* (Brookline, Dedham and Milton only)

|  | 6/1/00 | 12/1/00 | 6/1/01 | 12/1/01 | 6/1/02 | 12/1/02 | 6/1/03 | 12/1/03 |
|---|---|---|---|---|---|---|---|---|
| *INCREASE | 0.50 | 0.55 | 0.55 | 0.55 | 0.60 | 0.65 | 0.85 | 0.85 |
| Wages | 21.50 | 22.05 | 22.60 | 23.15 | 23.75 | 24.40 | 25.25 | 26.10 |
| H & W | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 |
| Pension | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 |
| Annuity | 3.15 | 3.15 | 3.15 | 3.15 | 3.15 | 3.15 | 3.15 | 3.15 |
| Nell-MCT | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| Unified Trust | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Training | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Legal | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |
| H & Safety | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| MCAP/CIM | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| Total | 30.75 | 31.30 | 31.85 | 32.40 | 33.00 | 33.65 | 34.50 | 35.35 |
| *Dues & LPL | (-.70) | (-.70) | (-.70) | (-.70) | (-.70) | (-.70) | (-.70) | (-.70) |

*Dues and LPL are deducted from wages*

ZONE 2    *BARNSTABLE, BRISTOL, DUKES, ESSEX, NANTUCKET, PLYMOUTH and WORCESTER COUNTIES*

*MIDDLESEX COUNTY* (With the exception of Arlington, Belmont, Burlington, Cambridge, Everett, Malden, Melrose, Reading, Somerville, Stoneham, Wakefield, Winchester, Winthrop and Woburn)

*NORFOLK COUNTY* (With the exception of Brookline, Dedham and Milton only)

*FRANKLIN COUNTY* (Warwick, and Orange only)

The Town of Salem in Rockingham County, New Hampshire

|  | 6/1/00 | 12/1/00 | 6/1/01 | 12/1/01 | 6/1/02 | 12/1/02 | 6/1/03 | 12/1/03 |
|---|---|---|---|---|---|---|---|---|
| *INCREASE | 0.45 | 0.45 | 0.45 | 0.45 | 0.55 | 0.55 | 0.65 | 0.65 |
| Wages | 19.90 | 20.35 | 20.80 | 21.25 | 21.80 | 22.35 | 23.00 | 23.65 |
| H & W | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 |
| Pension | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 |
| Annuity | 2.25 | 2.25 | 2.25 | 2.25 | 2.25 | 2.25 | 2.25 | 2.25 |
| Nell-MCT | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| Unified Trust | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Training | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Legal | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |
| H & Safety | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| MCAP/CIM | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| Total | 28.25 | 28.70 | 29.15 | 29.60 | 30.15 | 30.70 | 31.35 | 32.00 |
| *Dues & LPL | (-.70) | (-.70) | (-.70) | (-.70) | (-.70) | (-.70) | (-.70) | (-.70) |

*Dues and LPL are deducted from wages*

*THE COUNCIL RESERVES THE RIGHT TO ALLOCATE THESE INCREASES IN ITS DISCRETION AMONG WAGES, FRINGE BENEFITS AND DUES DEDUCTION.

*Section 2.*    Watchmen Wage Rates and Benefit Allocation

| | 6/1/00 | 12/1/00 | 6/1/01 | 12/1/01 | 6/1/02 | 12/1/02 | 6/1/03 | 12/1/03 |
|---|---|---|---|---|---|---|---|---|
| INCREASE | 0.50 | 0.55 | 0.55 | 0.55 | 0.60 | 0.65 | 0.85 | 0.85 |
| Wages | 15.55 | | | | | | | |
| H & W | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 | 2.50 |
| Pension | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 | 2.35 |
| Annuity | 3.15 | 3.15 | 3.15 | 3.15 | 3.15 | 3.15 | 3.15 | 3.15 |
| Nell-MCT | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| Unified Trust | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 | 0.50 |
| Training | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 | 0.30 |
| Legal | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 | 0.10 |
| H & S | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 | 0.15 |
| MCAP | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 | 0.05 |
| *Dues & LPL | (-.70) | (-.70) | (-.70) | (-.70) | (-.70) | (-.70) | (-.70) | (-.70) |

*Dues and LPL are deducted from wages*

**MASS LABORERS CONTRIBUTION RATES**

ZONE 1    ZONE 2

| YEAR | | WAGES | H&W | PENSION | ANNUITY | NMGT/UT | UT | TRAINING | LEGAL | H&S | MCAP/CIM | DUES | FRINGES | TOT PKG |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1995/ | JUN 01 | $18.95 | $3.00 | $2.15 | $1.50 | $0.15 | | $0.25 | $0.10 | $0.05 | $0.05 | $0.55 | $7.80 | $26.75 |
| | Dec-01 | $19.10 | $3.00 | $2.35 | $1.50 | $0.15 | | $0.25 | $0.10 | $0.05 | $0.05 | $0.55 | $8.00 | $27.10 |
| 1996/ | JUN 01 | $19.45 | $3.00 | $2.35 | $1.50 | $0.15 | | $0.25 | $0.10 | $0.05 | $0.05 | $0.60 | $8.05 | $27.50 |
| | Dec-01 | $19.80 | $3.00 | $2.35 | $1.50 | $0.15 | | $0.25 | $0.10 | $0.05 | $0.05 | $0.60 | $8.05 | $27.85 |
| 1997 | JUN 01 | $19.80 | $2.50 | $2.35 | $2.00 | $0.66 | | $0.25 | $0.10 | $0.05 | $0.05 | $0.60 | $8.55 | $28.35 |
| | Sep-01 | $18.90 | $2.50 | $2.35 | $2.00 | $0.85 | | $0.25 | $0.10 | $0.10 | $0.05 | $0.70 | $8.70 | $28.60 |
| | Dec-01 | $20.25 | $2.50 | $2.35 | $2.00 | $0.85 | | $0.25 | $0.10 | $0.10 | $0.05 | $0.70 | $8.70 | $28.95 |
| 1998 | Z1/JUN1 | $20.75 | $2.50 | $2.35 | $2.00 | $0.15 | $0.50 | $0.25 | $0.10 | $0.10 | $0.05 | $0.70 | $8.70 | $28.95 |
| | Z1/DEC1 | $20.25 | $2.50 | $2.35 | $2.75 | $0.15 | $0.50 | $0.25 | $0.10 | $0.10 | $0.05 | $0.70 | $8.70 | $29.45 |
| | Z2/DEC1 | $19.05 | $2.50 | $2.35 | $2.00 | $0.15 | $0.50 | $0.25 | $0.10 | $0.10 | $0.05 | $0.70 | $9.45 | $29.70 |
| 1999 | Z1/JUN1 | $20.76 | $2.50 | $2.35 | $2.75 | $0.15 | $0.50 | $0.25 | $0.10 | $0.10 | $0.05 | $0.70 | $8.70 | $27.75 |
| | Z1/DEC1 | $21.50 | $2.50 | $2.35 | $2.75 | $0.15 | $0.50 | $0.25 | $0.10 | $0.10 | $0.05 | $0.70 | $9.45 | $30.20 |
| | Z2/JUN1 | $19.05 | $2.50 | $2.35 | $2.25 | $0.15 | $0.50 | $0.25 | $0.10 | $0.10 | $0.05 | $0.70 | $9.45 | $30.95 |
| | Z2/DEC1 | $18.55 | $2.50 | $2.35 | $2.25 | $0.15 | $0.50 | $0.25 | $0.10 | $0.10 | $0.05 | $0.70 | $8.95 | $28.00 |
| 2000 | Z1/JUN1 | $21.50 | $2.50 | $2.35 | $3.15 | $0.15 | $0.50 | $0.30 | $0.10 | $0.15 | $0.05 | $0.70 | $8.95 | $28.50 |
| | Z1/DEC1 | $21.50 | $2.50 | $2.35 | $3.70 | $0.15 | $0.50 | $0.30 | $0.10 | $0.15 | $0.05 | $0.70 | $10.50 | $31.45 |
| | Z2/JUN1 | $19.90 | $2.50 | $2.35 | $2.25 | $0.15 | $0.50 | $0.30 | $0.10 | $0.15 | $0.05 | $0.70 | $9.05 | $32.00 |
| | Z2/DEC1 | $20.10 | $2.50 | $2.35 | $2.50 | $0.15 | $0.50 | $0.30 | $0.10 | $0.15 | $0.05 | $0.70 | $9.30 | $28.95 |
| 2001 | Z1/JUN1 | $21.75 | $2.80 | $2.35 | $3.70 | $0.15 | $0.50 | $0.30 | $0.10 | $0.15 | $0.05 | $0.70 | $10.80 | $32.65 |
| | Z1/DEC1 | $22.30 | $2.80 | $2.35 | $3.70 | $0.15 | $0.50 | $0.30 | $0.10 | $0.15 | $0.05 | $0.70 | $10.80 | $33.10 |
| | Z2/JUN1 | $20.25 | $2.80 | $2.35 | $2.50 | $0.15 | $0.50 | $0.30 | $0.10 | $0.15 | $0.05 | $0.70 | $9.60 | $29.85 |
| | Z2/DEC1 | $20.70 | $2.80 | $2.35 | $2.50 | $0.15 | $0.50 | $0.30 | $0.10 | $0.15 | $0.05 | $0.70 | $9.60 | $30.30 |
| 2002 | Z1/JUN1 | $22.50 | $3.15 | $2.35 | $3.70 | $0.15 | $0.50 | $0.35 | $0.10 | $0.15 | $0.05 | $0.70 | $11.20 | $33.70 |
| | Z1/DEC1 | | | | | | | | | | | | $0.00 | $0.00 |
| | Z2/JUN1 | $20.85 | $3.15 | $2.35 | $2.60 | $0.15 | $0.50 | $0.35 | $0.10 | $0.15 | $0.05 | $0.70 | $10.00 | $30.85 |
| | Z2/DEC1 | | | | | | | | | | | | $0.00 | $0.00 |

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

PAUL J. McNALLY, as he is TRUSTEE, MASSACHUSETTS LABORERS' HEALTH AND WELFARE FUND and NEW ENGLAND LABORERS' TRAINING TRUST FUND; JAMES MERLONI, JR., as he is TRUSTEE, MASSACHUSETTS LABORERS' PENSION FUND and MASSACHUSETTS LEGAL SERVICES FUND; MARTIN F. WALSH, as he is TRUSTEE, MASSACHUSETTS LABORERS' ANNUITY FUND

## DEFENDANTS

FILED

Spencer White & Prentis Foundation Corp. and Brian LaRue, Defendants and P. DeRenzo Construction Company, Inc., Horton Construction, Inc., Mansour Construction, Inc., O'Connor Constructors, Inc., J. DeMatteo Construction Co., and Stablano A. Chapman, Inc., Reach-and-Apply Defendants

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Gregory A. Geiman, Esquire
Segal, Roitman & Coleman
11 Beacon Street, Suite #500
Boston, MA  02108

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)
AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **LABOR** | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☒ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION

(CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

This is a claim to collect unpaid benefit fund contributions, brought pursuant to ERISA, 29 U.S.C. Sec. 1132.

## VII. REQUESTED IN COMPLAINT:

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☐ YES  ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY    N/A

JUDGE _____    DOCKET NUMBER _____

DATE
2/17/05

SIGNATURE OF ATTORNEY OF RECORD
Gregory A. Geiman

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) Paul J. McNally, as he is Trustee,
Mass. Laborers' Health & Welfare Fund v. Spencer White & Prentis Foundation Corp.
and Brian LaRue, et al

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODES LISTED ON THE
CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

___  I.    160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

X    II.   195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,
           740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.

___  III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
           315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
           380, 385, 450, 891.

___  IV.   220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
           690, 810, 861-865, 870, 871, 875, 900.

___  V.    150, 152, 153.

FILED
IN CLERKS OFFICE
2005 FEB 18 P 1:21
*Also complete AO 120 or AO 121
for patent, trademark or copyright cases
U.S. DISTRICT COURT
DISTRICT OF MASS.

05 10332 NMG

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(E)).
N/A

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS
COURT?                                                              YES ☐    NO ☒

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE
PUBLIC INTEREST?  (SEE 28 USC 2403)                                 YES ☐    NO ☒
IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
                                                                    YES ☐    NO ☐

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO
TITLE 28 USC 2284?                                                  YES ☐    NO ☒

7. DO ALL PARTIES IN THIS ACTION RESIDE IN THE CENTRAL SECTION OF THE DISTRICT OF MASSACHUSETTS
(WORCESTER COUNTY) - (SEE LOCAL RULE 40.1(C)).                      YES ☐    NO ☒
OR IN THE WESTERN SECTION (BERKSHIRE, FRANKLIN, HAMPDEN OR HAMPSHIRE COUNTIES)? -
(SEE LOCAL RULE 40.1(D)).                                           YES ☐    NO ☒

8. DO ALL OF THE PARTIES RESIDING IN MASSACHUSETTS RESIDE IN THE CENTRAL AND/OR WESTERN SECTIONS OF
THE DISTRICT?                                                       YES ☐    NO ☒
(a)    IF YES, IN WHICH SECTION DOES THE PLAINTIFF RESIDE? _____

9. IN WHICH SECTION DO THE ONLY PARTIES RESIDING IN MASSACHUSETTS RESIDE? N/A

10. IF ANY OF THE PARTIES ARE THE UNITED STATES, COMMONWEALTH OF MASSACHUSETTS, OR ANY GOVERNMENTAL
AGENCY OF THE U.S.A. OR THE COMMONWEALTH, DO ALL OTHER PARTIES RESIDE IN THE
CENTRAL SECTION: YES ☐ NO ☐  N/A  OR WESTERN SECTION: YES ☐  NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME Gregory A. Geiman
ADDRESS Segal, Roitman & Coleman, 11 Beacon Street, Suite #500, Boston, MA 02108
TELEPHONE NO. (617) 742-0208

(Category.frm rev - 3/97)